## JOAN MORRISON v. JOHN S. MORRISON.

*Equity—Affidavit for order of publication—Divorce.*

1. A sheriff returned a subpœna in a chancery suit *unserved*, he being unable to find the defendant in his county after diligent inquiry, and that he had been informed that defendant was somewhere in the State, which he believed to be true, but was unable to learn his whereabouts. Affidavit was made by complainant's solicitor, showing diligent search and inquiry for defendant, and as to his place of residence and whereabouts, and affiant's failure to find either, and giving his *last* known place of residence in the State, and stating that, to the best of affiant's knowledge and belief, derived from such search and inquiry, the defendant was then a resident of said State.

    *Held*, sufficient to authorize substituted service by publication, within the ruling in *Colton v. Rupert*, 60 Mich. 319 (head-note 3).

2. Incompatibility of temper is not a legal cause for granting a divorce, and, where *both* parties are in fault, *neither* should be released from the marriage contract. The marriage relation should not be considered as a garment, to be worn or cast aside at pleas-

ure ; the stability of the State, the welfare of society, and the
sanctity of the home demanding that it should not be dissolved
for light and transient causes, nor unless the charges made in the
bill of complaint are satisfactorily established by the testimony,
and the applicant is free from blame as to the procuring cause.

Appeal from Houghton. (Williams, J.) Argued October
21, 1886. Decided January 6, 1887.

Bill for divorce. Defendant appeals. Decree reversed
and bill dismissed. The facts are stated in the opinion.

*Thomas M. Brady* (*J. H. Chandler* and *Cahill & Ostrander*, of counsel), for complainant.

*T. L. Chadbourne*, for defendant.

CHAMPLIN, J. On the fourth of August, 1885, the complainant filed her bill for a divorce against the defendant,
who answered, and asked the benefit of a cross-bill, and
prayed for a divorce from complainant.

Proofs were taken, covering over 700 printed pages, and a
decree was entered in the circuit court for the county of
Houghton in complainant's favor, dissolving the marriage
between her and the defendant, and granting alimony, to be
paid until further order, of the sum of $480 annually, to be
paid in monthly payments, and to be secured by defendant.

No relief was granted on the cross-bill.

The parties to this suit were married December 2, 1884, at
St. Louis, Missouri, and lived together until some time in the
following June. The defendant, John S. Morrison, was at
the time of this marriage a widower, and the father of three
children by his former wife, the eldest of whom was a
daughter, aged about 17. He was in the employment of the
Calumet & Hecla Mining Company, as foreman in its blacksmith shop, at a salary of $1,800 a year. His brother had
married a sister of complainant, and resided in the vicinity.
He appears also to have been acquainted with other members
of the family.

In 1873 the complainant was married to one McCall, in the province of Canada, by whom she had three children, the eldest being about 10 years of age at the time of her marriage with defendant. McCall deserted her in Canada, and came to Michigan, and stopped at Sault Ste. Marie, whither, after a time, she followed him, when he again fled, and his whereabouts became unknown to her. She visited her sister at Calumet, where defendant saw her. She applied for a divorce from McCall, and filed her bill in the circuit court for the county of Chippewa, alleging therein, as cause, desertion and failure to support. That bill was filed the seventeenth day of October, 1883.

The subpœna to appear and answer was returnable November 6, 1883, and returned by the sheriff that he was unable to find defendant in his county, after diligent inquiry; but that he had been informed that he was somewhere in the State, which he believed to be true, but was unable to learn his whereabouts.

Affidavit was made and filed by the solicitor for the complainant, stating that, as such, he had made diligent search and inquiry for, and as to the place of residence and whereabouts of, said McCall, and, after such search and inquiry, he was unable to find the defendant, or his exact whereabouts; that his last known place of residence was in Sault Ste. Marie, Chippewa county, State of Michigan; and that, to the best of his knowledge and belief, derived from such search and inquiry, the defendant was then a resident of the State of Michigan.

Upon filing this affidavit, an order of publication was granted by the circuit judge, which recited that process could not be served upon the defendant by reason of his continued absence from, or concealment within, the State, and the order required the defendant to appear and answer within three months from the date of the order.

Proof of publication was duly filed, and also of the non-appearance of defendant, and an order was entered on February 12, 1884, taking the bill as confessed.

The case proceeded to a decree, which was entered on the eighteenth day of March, 1884, granting a divorce upon the ground of desertion.

This decree is assailed by the defendant in this suit as being invalid, for which reason he alleges that his subsequent marriage with complainant is also void. The invalidity consists, it is said, in the insufficiency of the affidavit upon which the order of publication was based; that it does not affirmatively and positively appear from the affidavit that the defendant was then a resident of this State; that it only shows that his last known place of residence was at the Sault, and offers nothing to show his present place of residence, and contains nothing to show that the non-service was by reason of his absence from the State, nor of his concealment within it.

In support of this we are cited to the cases of *Torrans v. Hicks*, 32 Mich. 307; *Merrill v. Montgomery*, 25 Id. 73; *Soule v. Hough*, 45 Id. 418.

It is unnecessary to review these authorities. The whole subject was very fully considered in the cases of *Pettiford v. Zoellner*, 45 Mich. 358, and *Colton v. Rupert*, 60 Id. 318; and within the ruling of these cases the affidavit was sufficient to confer jurisdiction upon the court, and the decree made is unassailable in this proceeding.

After these parties were married, they proceeded upon a wedding trip, and did not return to Calumet until the sixth of February, 1885, when they went to housekeeping in a house owned by the mining company, and united their two families under the same roof. They did not long remain a happy family. An antagonism soon showed itself between the eldest daughter of defendant and complainant. The younger children quarreled; the elder sister espoused the cause of her brother and sister, the mother, of her own chil-

·dren.  The defendant endeavored to stand neutral, but there ·is no neutral ground which can be long occupied in relations such as these.  It is needless to recapitulate the troubles which, beginning on the tenth of February, continued until the separation, in June following.

The charges of ill treatment and cruelty alleged in the bill ·of complaint are supported only by the testimony of complainant, and I am satisfied that her testimony is colored by her feelings, and that the transactions which she narrates as having occurred when no witnesses were present are largely ·overstated.  There can be no question, from the testimony, that her conduct and conversation were such as justified a ·suspicion of the unsoundness of her mental condition.  Her ·attending physician testified, and it is nowhere contradicted, that she was afflicted with a disease called "hysterical mania," which required treatment by a specialist in mental ·diseases; and efforts were made to have her go to a retreat ·at Guelph, Canada, for examination and treatment.  Attempts were made by some one to burn the residence occupied by defendant and complainant, and also the barn upon the premises.  Suspicion fastened upon complainant.  She was ·aware of it, and retained counsel to advise with her.  This suspicion was entertained by the defendant, but at the time he was ·also of the opinion that, if it was she that did it, it was the result of her mental condition, and not of a criminal design to commit the offense of arson.  He was advised by her family physician that she ought, at all times, to be kept under surveillance, and not be left alone, and to this end a nurse ought to be employed, not that she needed nursing, but ·as a companion; and he made efforts to comply with the advice of her physician.  She and her counsel were aware of this opinion respecting her mental condition, and were con·sulted about her going for examination and treatment, and ·she promised to go, but declined, at the last moment, for fear that defendant designed to procure her incarceration in ·an insane asylum, whether she was insane or not.

She offered, after the separation, to return and live with defendant, if he would send his eldest daughter away. She also expressed a willingness to go off on a trip with him of three weeks' duration, and applied to the superintendent of the mine for and obtained leave of absence for him to do so. These facts are significant as showing that she regarded her charges of cruelty against him as trivial, if such cruelty had ever existed. The testimony shows that she had been afflicted with hysteria before her marriage with defendant, and that both she and defendant were advised by friends and relatives against contracting the marriage relation. They entered into this relation knowing the character and disposition of each other, and their surroundings. His conduct cannot be regarded as altogether blameless, and was not calculated, in all instances, to make his wife happy and contented. No sufficient excuse is given by him for absenting himself from home until very late hours of the night. His proper place evenings, when not kept away by the demands of business, was at home, in the society of his wife and family. Where both are to blame, neither should be granted a divorce.

If incompatibility of temper were a legal cause for a divorce, a cause would be made out in this case. But it is not. The marriage relation should not be considered as a garment, to be worn or cast aside at pleasure. The stability of the State, the welfare of society, the sanctity of the home, demand that it should not be dissolved for light and transient causes, nor unless the charges made in the bill of complaint are satisfactorily established by the testimony, and the party applying is free from blame as to the procuring cause.

With regard to the fires, the testimony does not convince my mind by whom they were set. After weighing all the testimony, the question is left as much in doubt as ever. It is unnecessary, in the disposition of the case, to decide it.

I think, upon the whole testimony, that the decree of the court below should be reversed, and the bill of complaint

dismissed, without costs in this Court; the defendant to pay the costs of the court below.

CAMPBELL, C. J., and SHERWOOD, J., concurred.

MORSE, J.   I think the defendant is entitled to a decree of divorce from his wife, but agree on dismissing her bill.