ROOT *v.* ROOT.

1. EQUITY—CROSS-BILL—PLEADING.
   A cross-bill can be sustained only on matters growing out of the original bill and embraced in it.

2. SAME — HUSBAND AND WIFE — DIVORCE — INJUNCTION AGAINST WIFE'S ENGAGING IN COMPETITIVE BUSINESS.
   In a suit by a husband to restrain his wife from engaging in business in competition with him, wherein the wife filed an answer to the bill and asked by a cross-bill for a divorce on the theory that he had, by extreme cruelty, compelled her to leave him, and she was obliged to compete with his business in order to support herself, the matters averred in the cross-bill were germane to the bill. MCALVAY, J., dissenting. ·

3. DIVORCE—CONDONATION.
   By a reconciliation and a resumption of marital relations, after the filing of a bill for divorce by the wife on the ground of cruelty, the acts relied on in her bill were condoned.

4. SAME—EXTREME CRUELTY.
   Evidence that husband and wife quarreled over business matters, whereupon the wife resolved to leave him, and in an ensuing dispute he struck her, accompanied by proofs tending to show that the difficulty between them originated in the wife's desire to control the business of her husband, is insufficient to justify a decree of divorce in her favor on the ground of extreme cruelty.

5. SAME—CLEAN HANDS—MAXIMS OF EQUITY.
   In divorce, as in other causes in equity, a complaining party must come with clean hands.

6. SAME—HUSBAND'S RIGHTS—WIFE'S SERVICES.
   The husband being required by law to afford his wife support reasonably consistent with his means and station, is entitled to her services and society.

7. SAME—SEPARATE BUSINESS OF WIFE.
   While the wife may, with her husband's consent, conduct a business upon her own account, she may not compete with him against his consent, if he is willing and able to support her.

Appeal from Washtenaw; Kinne, J. Submitted January 10, 1911. (Docket No. 66.) Decided March 13, 1911.

Bill by Frank M. Root against Minnie M. Root for injunction. Defendant filed a cross-bill for divorce. From a decree granting the divorce and awarding alimony, both parties appeal. Reversed.

*Frank A. Stivers* (*B. M. Thompson*, of counsel) for complainant.

*M. J. Cavanaugh*, for defendant.

The parties to this cause are husband and wife, having been married in the year 1890. For ten years after the marriage they lived at various places; the husband being engaged a part of the time as a teacher and later as a piano salesman. In the year 1900 they located in the city of Ann Arbor, where with a capital of about $300 they

opened a small store in which they handled pianos, sheet music, and musical merchandise. The business seems to have prospered from the start. Both husband and wife were untiring in their labors, and the success which crowned their efforts seems to be attributable to both.

In January, 1906, the wife filed a bill for divorce, in which she charged extreme cruelty. No personal violence was charged, and the allegations of cruelty were not very specific. Upon the hearing of the application for temporary alimony in that cause, the parties discussed the question of a settlement of their property interests. This conference resulted in a withdrawal by the wife of her bill of complaint and a renewal of the marital relation. The parties continued to live together as man and wife until January, 1909, when the wife again left her husband, and on February 1, 1909, she started a business in the city of Ann Arbor similar in character, and in opposition to that of her husband. Thereupon he filed his bill of complaint in this cause, in which he averred his ability and willingness to properly support his wife, and prayed that she be enjoined from continuing against his will to prosecute the competitive business established by her. To this bill of complaint defendant filed an answer, admitting the establishment of the rival business, but averring that complainant had driven her from her home, and it became necessary for her to do something for her own support. She further filed a cross-bill, in which she again charged complainant with extreme cruelty, and prayed for a divorce. Upon the hearing she testified that her action in going into business upon her own account in competition with her husband was without his consent and against his strenuous protest. The trial court dismissed the bill of complaint, and granted to the defendant a divorce upon her cross-bill, with permanent alimony in the sum of $1,000, besides confirming in her the title to a parcel of real estate which had been partially paid for out of the proceeds of the husband's business. Both parties have appealed from the decree entered.

BROOKE, J. (*after stating the facts*). We are met at the outset by this question: Can the defendant by way of cross-bill ask for a divorce in a cause where the complainant by his original bill seeks injunctive relief only? In the early case of *Andrews* v. *Kibbee*, 12 Mich. 94 (83 Am. Dec. 766), Mr. Justice CAMPBELL defined the purpose of a cross-bill as follows:

"A cross-bill for purposes of relief is always designed for the purpose of enabling a defendant to avail himself of some defense which can only be made complete by granting him some affirmative relief against complainant or against some codefendant."

In *Hackley* v. *Mack*, 60 Mich. 591 (27 N. W. 871), it was said:

" A cross-bill can be sustained only on matters growing out of the original bill and embraced in it "—citing authorities.

See, also, *Powers* v. *Hibbard*, 114 Mich. 533 (72 N. W. 339); *Union Street-Railway Co.* v. *City of Saginaw*, 115 Mich. 300 (73 N. W. 243); 16 Cyc. p. 324.

In the case here considered, the husband sets out in his bill of complaint the fact that defendant is his wife, and that as such he is entitled to her society and services. He further avers that her act in establishing a competitive business is injurious to his own enterprise, and is without his consent and against his protest. To this bill the wife answers, admitting the existence of the marriage, but by her cross-bill she avers that she is entitled to a severance of the relation because of her husband's cruelty.

The husband's sole right to the injunctive relief prayed is predicated upon the existence of a contract which the wife by her cross-bill seeks to annul. If his conduct towards his wife has been such as to warrant her in seeking and securing the relief of a divorce from him, she by establishing this fact, and securing the relief, deprives complainant of the only ground he claims to have which would justify his interference with her business plans.

164 MICH.—41.

After careful consideration, we have reached the conclusion that the matter set out in the cross-bill is germane to the bill. The fact that complainant went to a full hearing upon the cross-bill and his answer thereto, without objection, would not be without significance if it were necessary to give it consideration. We must therefore consider the merits of the cause as presented in the record.

The learned circuit judge who heard the case filed a written opinion as follows:

"In January of this year, Mrs. Root felt that her relations with her husband were unendurable, and she endeavored quietly to pass wholly out of his life. She asked and took no assistance whatever at their parting. She engaged in business by herself and for herself. Very shortly thereafter Mr. Root commenced these proceedings, claiming that he was entitled to her services and companionship, and seeking an injunction to restrain her from engaging in or conducting an independent business. It seems to me that one does not often witness a more puerile and cowardly act on the part of the husband towards his wife than this attempt at coercion. During this trial he has frequently declared his great love for this woman. Such conduct on his part may be consistent with chivalry and love, but it does not so impress me. The evidence in this case, however, convinces me that the wrongdoing is not wholly on the side of Mr. Root. There is neither vice nor crime nor immorality on the part of either, but every vestige of the marriage relation, save the bare, naked form thereof, has disappeared. Where mutual respect, confidence, and love should exist, only repulsion and hatred are seen, and, so far as Mrs. Root is concerned, this state of mind is hopeless and apparently eternal. If anything but evil can emanate from such a relation, I am unable to discover it. Ill will, unhappiness, keen misery, and social scandal are the only present manifestations of this marriage. It must be a mistaken view of public policy which would demand the continuance of this relation. I do not find that Mrs. Root has always been angelic or wholly blameless, or that there is anything bad or vicious in the moral nature of Mr. Root. Physical violence is, however, not the only form of cruelty. There may be a constantly recurring form of refined cruelty that may be less tangible, yet, in its effect, more deadly

and extreme.    In her bill Mrs. Root asks for a decree of divorce upon the grounds of extreme cruelty.    I think she is entitled to such relief."

We quite agree with the learned circuit judge where he says:

"There may be a constantly recurring form of refined cruelty that may be less tangible, yet, in its effect, more deadly and extreme."

We have, however, gone over this voluminous record with care, and have failed to discover the evidence which would make the observation pertinent to the facts in this case.    The parties lived together for 16 years without any undue friction.    The wife then filed her first bill for divorce.    The charges she made in that bill, even if supported by due proof and found to be ample to sustain a decree, cannot here be considered.    By her dismissal of that proceeding and the resumption of marital relations those alleged acts of cruelty were by her condoned.    After the reconciliation, they again lived in perfect amity for nearly three years more, according to the testimony of the wife.    Her right to relief must be predicated solely upon the occurrences of the last few weeks during which they lived together.    A dispute seems to have arisen between them as to the conduct of the business, many of the important details of which had passed into the hands of the wife.    For reasons sound or unsound, but to him sufficient, the husband determined to resume control of those details.    This determination incensed the wife, and led to her leaving her husband and establishing the rival business.    The single act of personal violence charged by the wife in her bill, as occurring after the dismissal of her first bill, occurred at this time and after she had determined to leave and had so notified her husband.    In the light of the husband's explanation of the incident, we attach but little importance to it.    He did not, as charged, turn her out of the home, but did urge her, perhaps with undue insistence, to leave the store in order that he might carry out

his plans with reference to the conduct of the business. We are impressed with the fact that the sole difficulty between the parties arises from the fact that the wife desired to actively control the business of her husband, and, failing in this desire, determined to leave him and secure a business which she could control. Her manner of dealing with the lot purchased in part with the moneys from her husband's business, but standing in her own name, lends color to this view. The learned circuit judge finds "nothing bad or vicious in the moral nature of Mr. Root." And further says: "I do not find Mrs. Root has always been angelic or wholly blameless." In *Hoff* v. *Hoff*, 48 Mich. 281 (12 N. W. 160), Mr. Justice COOLEY said:

"And it is as true of divorce cases as any others, that a party must come into a court of equity with clean hands. Divorce laws are made to give relief to the innocent, not the guilty."

In *Beller* v. *Beller*, 50 Mich. 49 (14 N. W. 696), this court said:

"When we examine the evidence tending to prove extreme cruelty, we are of opinion that it falls far short of establishing a case in favor of either party. It is undoubtedly true that there was more or less wrangling between these parties growing out of money matters, and that because thereof they did not live as happily together as they should have done, yet still no case of extreme cruelty is made out."

See, also, *Cooper* v. *Cooper*, 17 Mich. 205 (97 Am. Dec. 182); *Rose* v. *Rose*, 50 Mich. 92 (14 N. W. 711); *Morrison* v. *Morrison*, 64 Mich. 53 (30 N. W. 903); *Downey* v. *Downey*, 135 Mich. 265 (97 N. W. 699).

Neither incompatibility of temper nor the ordinary misunderstandings and bickerings which are characteristic of the marriage relation in a considerable percentage of cases, have been made grounds for divorce in this State. The legislature might, if it chose, extend the jurisdiction of courts to grant decrees of divorce upon these grounds. It has not done so, however, and those who are married

must bear the real or fancied burdens they have assumed, unless the conduct of one entitles the other, that other being without fault, to a severance of the relation for one or other of the statutory causes.

Is the husband entitled to the relief sought ? The husband, being of sufficient ability, is bound in law to afford to his wife support reasonably consistent with his own means and station. As a necessary corollary to this proposition, it follows that the husband as a matter of law is entitled to the services and society of his wife. This right has been affirmed many times in our own State. *Glover* v. *Alcott*, 11 Mich. 470; *Randall* v. *Randall*, 37 Mich. 563; *Mason* v. *Dunbar*, 43 Mich. 407 (5 N. W. 432, 38 Am. Rep. 201); *Harrington* v. *Gies*, 45 Mich. 374 (8 N. W. 87); *Sines* v. *Superintendents of the Poor*, 58 Mich. 503 (25 N. W. 485). That the wife may, with the husband's consent, conduct a business upon her own account, is not open to question ( *Tillman* v. *Shackleton*, 15 Mich. 447 [93 Am. Dec. 198]; *Rankin* v. *West*, 25 Mich. 195), but we have been unable to find any decision (and we are cited to none by counsel) which affirms this right in the wife, where her husband is able and willing to support her and withholds his consent. In the case of *Artman* v. *Ferguson*, 73 Mich. 146 (40 N. W. 907, 2 L. R. A. 343, 16 Am. St. Rep. 572), in considering the question of partnership between husband and wife, it was said :

"The important and sacred relations between man and wife, which lie at the very foundation of civilized society, are not to be disturbed and destroyed by contentions which may arise from such a community of property and a joint power of disposal and a mutual liability for the contracts and obligations of each other."

If a contract of partnership, with its consequent complications, is liable to imperil the marital relation, it should, we think, be obvious that active business competition between husband and wife would, of necessity, utterly annihilate it.

The decree of the court below is reversed, and a decree will be entered in this court dismissing defendant's cross-bill and granting to complainant a permanent injunction against defendant in accordance with the prayer of his bill  The complainant will pay to defendant's counsel a solicitor's fee of $100, this to be in full of all costs in the cause.

MOORE, BLAIR, and STONE, JJ., concurred with BROOKE, J.

McALVAY, J. The question of divorce was not germane to the injunctive relief complainant asked, and the cross-bill should never have been considered.  Divorce is purely a statutory proceeding.  The complainant was entitled to the relief asked under the proofs.  I agree in the result.