*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF JEROME E. SIZICK.

---

JANET A. SIZICK,

      Petitioner-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

      Respondent-Appellant.

UNPUBLISHED
January 18, 2024

No. 364321
Saginaw Probate Court
LC No. 21-141789-PO

---

Before: BOONSTRA, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

The Department of Health and Human Service (DHHS) appeals as of right the probate court's order granting the petition for a protective order filed by petitioner, Janet A. Sizick. We vacate the protective order in part and remand for further proceedings consistent with this opinion.[1]

## I. BACKGROUND

Janet has been married to Jerome Sizick for over 60 years. In March 2021, Jerome (who is currently 84 years old) needed to be hospitalized, and he was eventually transferred to a nursing home, where he is likely to remain for the rest of his life. In May 2021, his healthcare insurance was terminated, and he began privately paying for his care.

On May 28, 2021, before Jerome applied for Medicaid to help pay for his care, Janet petitioned the probate court for a protective order pursuant to MCL 700.5401(3), asking the

---

[1] The probate court issued a separate order in which it explained that it was backdating the protective order, and that order explained why. Because this opinion vacates the protective order, the probate court's separate order addressing retroactivity is necessarily also vacated.

-1-

probate court to transfer all of Jerome's assets and the majority of his income to Janet pursuant to MCL 700.5408. In a supplement filed with the petition, Janet explained that Jerome was suffering from multiple health problems, the "most significant" of which was dementia. The supplement identified Jerome's and Janet's income streams, Janet's estimated future monthly expenses (which totaled $3,426/month), and a calculation for Jerome's estimated patient-pay amount for Medicaid. After listing these items, the supplement stated that petitioner was requesting that all of Jerome's and Janet's assets be transferred to Janet "for her support," and that Janet's "spousal income allowance" be increased to $2,000/month.

While the petition for a protective order was pending, Jerome applied for Medicaid. But no decision on Jerome's application was rendered before the June 21, 2021 hearing on Janet's petition.

At that June 2021 hearing, the trial court took testimony on Janet's petition. Janet confirmed that she had applied for Medicaid on Jerome's behalf and testified that the initial assessment of the married couple's countable assets was approximately $203,000, but she was unable to identify specific assets and how much they were worth. Janet next testified about Jerome's income; she confirmed that he receives $1,748.50 from social security ($148.50 of which is paid to his Medicare Part B premium) and $1,351.29 from a pension from General Motors. Janet testified that her income consisted of $830.50 from social security, $148.50 of which is paid to her Medicare Part B premium, so her net monthly income was $632. Janet testified that the estimated future expenses that she included in the supplement to her petition were accurate. Janet also confirmed that, as petitioner, she was requesting that the probate court transfer 100% of her and Jerome's assets to Janet individually, and that the probate court grant Janet an "income allowance" of $2,318, which was higher than the amount requested in the petition.

On cross-examination, Janet was asked about Jerome's expenses, and she said that his expenses were "[j]ust in living out there at the home." She was "not sure" what those expenses were, however. When asked how Jerome could afford his expenses if Janet received all of the assets and incomes, Janet said she did not know, but then her daughter interjected that they were applying for Medicaid to cover those expenses, and Janet confirmed that this was true. Janet said that Jerome had not been granted Medicaid benefits at that time, however. When asked how much in assets and income Janet was requesting to leave with Jerome, she responded, "I don't know."

Upon questioning by the probate court about Jerome's mental and physical status, Janet testified that Jerome had "Alzheimer's dementia," he was in a wheelchair and unable to walk, "he has totally forgotten how to chew so he has to eat pureed foods," and he had a heart attack and "a mild stroke." She also confirmed that he could no longer make or communicate informed decisions, such that he would not be able to write checks, take care of banking accounts, take care of the home, or do anything around the house.

Next, Julie Gries—Janet and Jerome's eldest daughter—testified that she helped prepare the calculations for Janet's future expenses with Janet's attorney. Gries confirmed that she had spoken with Jerome and that Jerome wanted all of his assets transferred to Janet and wanted a larger portion of his income diverted to Janet. When asked whether Janet would be able to live independently without the additional assets and income, Gries said she was unsure, but she doubted

it. In response to questioning by the probate court, Gries agreed with Janet's descriptions of Jerome's condition.

In an oral ruling from the bench, the probate court found by clear and convincing evidence that Jerome was unable to manage his property and business affairs effectively due to physical illness and mental deficiency, thus satisfying the requirement of MCL 700.5401(3)(a).[2] The court next found that Jerome had dependents in need of money for support and care, and that a protective order was necessary to obtain that money and property. The court detailed that, based on the testimony it heard, Janet needed additional income not only for her expenses but for covering the cost of renovations and possible funeral expenses. The probate court explained that, in reaching this conclusion, it also considered Jerome's expenses as outlined in the petition. The court additionally explained that it did not believe its award would impoverish Jerome, and that the award, "hopefully, will be enough [for Janet] to have an appropriate standard of living that does not run out so [Janet] can remain in the community and not be required to be on state assistance." The court believed that these findings were sufficient to satisfy MCL 700.5401(3)(b). And with both sections of MCL 700.5401(3) satisfied, the court stated that it would enter "a support order of $2,318 monthly income, assigned for the sole benefit of Jerome's spouse," Janet, as permitted by MCL 700.5408. The probate court also concluded that its findings gave it authority under MCL 700.5408 to enter an order transferring Jerome's property, and the court was going to order that "a hundred percent" of Jerome's assets "including any credit union accounts, financial investments or real estate," be transferred to Janet "as support for her."

The probate court later incorporated these findings into a written order. After recounting the relevant facts and the statutes authorizing the probate court's actions, the court stated in relevant part as follows:

> Pursuant to MCL 700.5401, this Court has considered the interest of the protected individual and his needs and obligations to contribute to the cost of his own care in deciding whether or how much to award Janet A. Sizick. The Court also has examined the sources of these assets and that these assets arose during the 61 years of marriage. The Court finds that the protected individual has financial

---

[2] MCL 700.5401(3) states in relevant part:

> (3) The court may appoint a conservator or make another protective order in relation to an individual's estate and affairs if the court determines both of the following:

> (a) The individual is unable to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.

> (b) The individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money.

means and ability to provide financial assistance for his wife; and the foreseeable needs of the protected individual, the individual's creditors, and his wife's basic but not excessive or merely desirable, needs have been considered. Accordingly, this Court finds that Janet A. Sizick is a spouse in need of assets and support from her husband, Jerome E. Sizick, the protected individual.

IT IS HEREBY ORDERED that Jerome E. Sizick is to transfer 100% of Mr. and Mrs. Sizick's countable assets including credit union accounts, financial investments, insurance, and real estate to Janet A. Sizick as support for Janet A. Sizick. Janet Sizick has also requested an increased spousal income allowance. The Petition requested an income allowance of $2,000.00. However, in further review, the Petitioner has amended the request and she is seeking a spousal income allowance of $2,318.00. IT IS HEREBY ORDERED that the Petitioner's request for an additional Support Order transferring monthly income of Jerome E. Sizick of $2,318.00 to Janet A. Sizick is granted.

The DHHS appealed this order as of right, and a panel of this Court affirmed in part, vacated in part, and remanded for further proceedings. *In re Sizick*, unpublished per curiam opinion of the Court of Appeals, issued May 26, 2022 (Docket No. 357785), p 1. The panel first addressed whether the probate court clearly erred by finding that Jerome was unable to effectively manage his property and business affairs due to mental deficiency and physical illness or disability, thereby satisfying MCL 700.5401(3)(a). The panel held that the probate court's finding was not clearly erroneous and accordingly affirmed that finding on appeal. *Id*. at 4-5, 7.

With respect to the probate court's finding related to MCL 700.5401(3)(b), however, the panel agreed with the DHHS's argument that the probate court could not consider that Jerome's needs could be met by Medicaid "in the absence of a final Medicaid determination." *Id*. at 5. The panel walked through the evidence considered by the trial court, highlighting the fact that it was unclear how Jerome's needs could be met (without Medicaid assistance, which he had not yet qualified for) if he transferred all of his assets and the majority of his income to Janet. *Id*. The panel accordingly "reversed the probate court's ruling on the basis of need, and remand[ed] for a redetermination." *Sizick*, unpub op at 6.

Lastly, the panel addressed the DHHS's argument that the probate court erred by failing to identify and value the assets being transferred in the protective order. *Id*. The panel noted that, while there was no statutory requirement that the probate court do so, this Court had held that "when a court is examining the financial needs of spouses and orders asset transfers on the basis of those needs, a valuation of the assets or interests therein is an inescapable and necessary component of the analysis." *Id*. at 7, quoting *In re Estate of Schroeder*, 335 Mich App 107, 125; 966 NW2d 209 (2020). The panel then noted that the record contained only "conclusory assertions" about the valuation of the assets being transferred and Jerome's interest in those assets, and that there was otherwise "no evidence supporting or identifying the countable assets, real property, and personal property." *Sizick*, unpub op at 7. The panel concluded:

As a result, it is unclear what assets or property are included in [the] trial court's "countable assets" calculation, whose ownership interest is included in the trial court's calculation or petition, and whether the trial court's order transferred

-4-

property independently owned by petitioner. Therefore, to the extent the trial court on remand grants a new protective order, evidence should be presented regarding the ownership interest and value of the assets being transferred. Despite its acknowledgment that there is no statutory requirement to do so, the *Schroeder* Court held in almost identical circumstances that such findings are required. [*Id*.]

Accordingly, the panel affirmed the probate court's finding under MCL 700.5401(3)(a), vacated its finding under MCL 700.5401(3)(b), and remanded the case "to the trial court for further findings under subsection (b) and to identify the property being transferred under MCL 700.5408." *Id*.

On remand, petitioner filed a petition to conduct an evidentiary hearing in order to enter "an amended protective order" in light of this Court's decision in *Sizick*. Many of the facts outlined in this petition were mere repetitions of what the original petition alleged, although the petition noted that, while the DHHS's original appeal in this Court was pending, the DHHS failed to process Jerome's Medicaid application, and ultimately denied his application shortly after the appeal was decided. This petition then outlined all of Janet and Jerome's assets, who had ownership in those assets, and the alleged value of those assets. This petition also realleged the amount of Jerome's and Janet's respective incomes, and contended that Janet's needs remained the same as alleged in her previous petition, "although there has been a significant increase in her cost-of-living starting in 2022." The petition requested the same relief as the original petition, and asked that the amended order be backdated to the date of the prior order—June 21, 2021.

In response, the DHHS first contended that the title and ultimate request of this petition was wrong because "there is no order to amend." The original order was found deficient by this Court, the DHHS explained, and so the probate court could only enter a new protective order. On the petition's substance, the DHHS argued that petitioner could not meet her burden for a protective order under MCL 700.5401(3). The DHHS conceded that this Court had agreed with the probate court that petitioner had satisfied MCL 700.5401(3)(a), but contended that petitioner could not satisfy MCL 700.5401(3)(b) because "[s]he still does not establish her need or explain how Jerome's impoverishment is not a problem for him." The DHHS emphasized that, as this Court recognized on appeal, there could be no assumption that Jerome's care would be paid for by Medicaid, and petitioner's request for Jerome's resources and income to be transferred to Janet would leave Jerome "destitute and still in need of a considerable amount of medical care," contrary to this state's caselaw. The DHHS also contended that petitioner's recitation of Janet and Jerome's assets was deficient because petitioner failed to provide accurate and up-to-date financial records that reflect the couple's assets' current value—petitioner used values from March and July 2021, while the petition was being considered in September 2022.

At a hearing on October 25, 2022, Gries testified and generally confirmed information about the couple's income from the previous hearing—that, as of 2021, Janet received $682 each month for social security after her Medicare premiums were deducted, Jerome received $1,600 per month from social security after his Medicare premiums were deducted, and Jerome had a monthly pension from General Motors for $1,351.29. Gries also said that she helped put together a monthly budget for Janet, and estimated Janet's monthly expenses as $3,426, although she admitted that this estimate was outdated and that Janet's monthly expenses were likely more at the time of the

-5-

hearing.  Gries also testified about Janet and Jerome's assets, listing each one and its value (or estimated value) as of March 2021 or July 2021.[3]

Janet testified that her current monthly budget was likely closer to $3,800 due to inflation. Janet also explained that she now had additional monthly expenses, including needing a "chore provider" for two to three hours a day at a rate between $20 to $25 per hour, and paying out-of-pocket for Jerome's "medical drug expenses," which averaged around $100 per month.  As far as the nursing home at which Jerome was residing, Janet testified that she paid the nursing home $4,405 in May 2021 as "private pay that would not have been covered by Medicaid."  Janet also confirmed that she had been making monthly payments to the nursing home at her attorney's instructions that could be "characterize[d] as a patient pay amount"; those payments were $573 per month in 2021 and $654 per month in 2022.

Jeremy Geiersbach, the director of billing services for St. Francis nursing home where Jerome was residing, testified that Jerome had an outstanding bill, and agreed that this was because his "Medicaid case was never processed."  According to Geiersbach, at the time of the hearing in October 2022, Jerome's amount due was $126,719; Jerome's amount due as of the following month would be $134,669.

In a ruling from the bench, the court first noted that this Court had affirmed its previous ruling under MCL 700.5401(3)(a), so it did not need to address the issue further.  Turning to MCL 700.5401(3)(b), the probate court recognized that it was required to consider both Janet's and Jerome's "needs and resources."  The probate court recounted the evidence that it heard and the exhibits that were entered into evidence, and then turned to Janet's monthly expenses, concluding that she had sufficiently established her "need" for the amount requested.  The probate court next recounted the evidence about Jerome's and Janet's assets and their interests in those assets.  The probate court then explained its findings and holding as follows:

> The Court after reviewing all this and looking at what the Court of Appeals has indicated that they require that the order affirming MCL 700.5401(3)(a) was retained here again today; that being that incapacity is established by clear and convincing evidence sufficient to satisfy MCL 700.5401(3)(a).  That was done in the initial hearing and the Court is adopting that and taking judicial notice of that again today as the Court of Appeals did indicate that was proper.
>
> The Court vacated the findings under 5401(3)(b) and it was remanded to make further findings under that and to identify the property being transferred under MCL 700.5408.  I have identified all the property that they have between the two of them, who owns it and what is owned.  As a result of that the Court is going to issue an amended protective order in which the Court will transfer 100 percent of

---

[3] Gries's testimony related to Janet's and Jerome's assets was supported by exhibits that were admitted into evidence without objection.  While those exhibits are not included in the lower court file, they appear to be included as appendices to petitioner's brief on appeal.

the assets of Jerome Sizick accumulated during their lifetime to Janet Sizick. The Court will order spousal income from Jerome of $2,318 per month.

The probate court reserved a decision on whether its order "can be nunc pro tunc," but believed that its "order would be effective as back to June 21, 2021," and said it would "issue an order back to that date."

On December 13, 2022, the probate court issued two orders to reflect its oral ruling from the bench—one order granting an "amended protective order" and one order addressing the retroactivity of the amended protective order. In its order granting the amended protective order, the probate court again recounted the facts and procedural history of the case, recounted Janet's needs, and recounted Janet's and Jerome's assets and their respective interests in those assets. The court then addressed MCL 700.5401(3)(a), concluding that it did not need to revisit its prior determination because it was affirmed by this Court. Addressing MCL 700.5401(3)(b), the probate court explained:

> This Court has considered the interests of the protected individual and his needs and obligations to contribute to the cost of his own care and deciding whether or not to award property and income to Janet Sizick. The Court has identified all of the property of the parties, the incomes of the parties, and the fact that they have been married for 62 years. This Court finds that the protected individual has financial means and ability to provide financial assistance for his dependent spouse; and the foreseeable needs of the protected individual, the individual's creditors, and his dependent spouse's basic but not excessive or merely desirable needs have to be considered. Accordingly, this Court finds that Janet A. Sizick is a dependent spouse in need of assets and support from her husband, Jerome E. Sizick[.]

Accordingly, the probate Court ordered Jerome "to transfer 100% of [his] assets" to Janet, and ordered Jerome to pay $2,318 in monthly income to Janet.

In the separate order addressing the retroactivity of the "amended protective order," the probate court began by noting that it believed that this Court in its previous decision "left standing major sections of the" probate court's previous order. The probate court then contrasted this with other cases addressing MCL 700.5401(3) in which this Court "vacated the entire Protective Order and remanded it to the Probate Court for further proceedings." The probate court next noted that the values of assets were more or less the same as before the original appeal, and the evidence at the hearing on remand was "essentially identical to the evidence that was previously submitted to the Court in June 21, 2021 hearing." The probate court then stated, "But for [the DHHS's] own actions to not process the Medicaid Application, Jerome Sizick would have been deemed eligible for Medicaid. Therefore, IT IS HEREBY ORDERED that the Court's finding and Amended Protective Order of October 25, 2022 is to [be] applied retroactive to June 21, 2021." The probate court alternatively reasoned that it could "appl[y] the legal doctrine of nunc pro tunc to the application of the Amended Protective Order making it effective as of June 21, 2021."

This appeal followed.

## II. MCL 700.5401(3)

On appeal, the DHHS first argues that the probate court clearly erred by concluding that petitioner had established the requirements under MCL 700.5401(3)—the statute granting probate courts the authority to enter a protective order directing the distribution of a protected individual's income to or for the use of any of the protected individual's dependents or other claimants—by clear and convincing evidence. We find no error with respect to the probate court's finding under MCL 700.5401(3)(a), but conclude that the probate court abused its discretion with respect to its findings under MCL 700.5401(3)(b) by applying the wrong legal framework. We accordingly vacate the probate court's finding with respect to MCL 700.5401(3)(b).

### A. STANDARD OF REVIEW

This Court is tasked with reviewing the probate court's decision that petitioner satisfied the requirements for the issuance of a protective order pursuant to MCL 700.5401(3). This Court has explained the review of such decisions as follows:

> [A]ppeals from a probate court decision are on the record, not de novo. We review a trial court's factual findings for clear error, while it's dispositional rulings, including a decision to enter a protective order, are reviewed for an abuse of discretion. A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding. An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes. A trial court may also abuse its discretion by failing to operate within the correct legal framework. [*In re Estate of Vansach*, 324 Mich App 371, 385; 922 NW2d 136 (2018) (quotation marks and citations omitted).]

### B. ANALYSIS

MCL 700.5401 provides in relevant part:

> (1) Upon petition and after notice and hearing in accordance with this part, the court may appoint a conservator or make another protective order for cause as provided in this section.

> * * *

> (3) The court may appoint a conservator or make another protective order in relation to an individual's estate and affairs if the court determines both of the following:

> (a) The individual is unable to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.

(b) The individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money.

Any findings under MCL 700.5401(3) must be established by clear and convincing evidence. MCL 700.5406(7). The clear-and-convincing-evidence standard is satisfied when the proof

> produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Evidence may be uncontroverted, and yet not be clear and convincing. Conversely, evidence may be clear and convincing despite the fact that it has been contradicted. [*In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (quotation marks, citation, and alterations omitted.)]

### 1. MCL 700.5401(3)(A)

The DHHS first argues that the probate court abused its discretion by finding that petitioner satisfied the requirements of MCL 700.5401(3)(a) by clear and convincing evidence because it did not address this subsection on remand. We conclude that, because the previous *Sizick* panel affirmed the probate court's finding under MCL 700.5401(3)(a) and no additional evidence related to the subsection was submitted on remand, the probate court's conclusion was proper.

We first address whether the DHHS's argument related to MCL 700.5401(3)(a) is foreclosed by the doctrine of the law of the case. As this Court has explained:

> Under the doctrine of law of the case, a ruling by an appellate court on a legal question binds the appellate court and all lower tribunals and the question may not be differently determined in the same case where the facts remain materially the same. This doctrine applies only to those questions determined by an appellate court's prior decision and to those questions which are necessary to the court's determination. [*Poirier v Grand Blanc Twp*, 192 Mich App 539, 546; 481 NW2d 762 (1992) (quotation marks and citations omitted).]

In its previous appeal, the DHHS made the same argument it does here—that the probate court clearly erred by finding that Janet established MCL 700.5401(3)(a) by clear and convincing evidence. *Sizick*, unpub op at 3. A panel of this Court rejected the DHHS's argument, holding that the probate court did not clearly err with respect to this finding. *Id*. at 4-5. Accordingly, in its concluding statement, the panel stated, "We affirm the trial court's finding under MCL 700.5401(3)(a) . . . ." *Id*. at 7. While this Court was reviewing a factual question, it ultimately arrived at a legal conclusion—the probate court did not clearly err when it found that Janet established MCL 700.5401(3)(a) by clear and convincing evidence.

On remand, the facts remained materially unchanged; indeed, part of the DHHS's argument in this appeal is that no new evidence about Jerome's condition was entered into evidence. It is not clear how, when faced with the same evidence, the lower court could reach a different

-9-

conclusion because doing so would have seemingly flown in the face of one the primary purposes of the law-of-the-case doctrine: to "maintain consistency" during the course of a continuous lawsuit. *Rott v Rott*, 508 Mich 274, 286-287; 972 NW2d 789 (2021) (quotation marks and citation omitted). Accordingly, because this issue was expressly decided by a prior panel, and because the facts remained materially unchanged on remand, the probate court correctly concluded that it did not need to revisit its finding under MCL 700.5401(3)(a).

Even if the law-of-the-case doctrine does not apply, we would still conclude that the probate court did not err by relying on the previous panel's statements. Again, the previous panel stated that the probate court's finding under MCL 700.5401(3)(a) was affirmed; it did not remand for any additional proceedings with respect to MCL 700.5401(3)(a). That stands in contrast to the panel's statement that the probate court's finding under MCL 700.5401(3)(b) was vacated and the case was "remand[ed] to the trial court for further findings under subsection (b) . . . ." *Sizick*, unpub op at 7. Given the prior panel's statements, it was reasonable for both Janet and the probate court to conclude that no further findings or proceedings were necessary to resolve questions surrounding MCL 700.5401(3)(a).

Regardless, even if this Court were to address the merits of the DHHS's argument that petitioner failed to established the requirements of MCL 700.5401(3)(a) by clear and convincing evidence, the argument would fail. The DHHS argues that the probate court could not have concluded that petitioner established the requirements of MCL 700.5401(3)(a) at the October 2022 hearing because there was no evidence that Jerome was incapacitated in October 2022. Yet evidence was presented at the June 21, 2021 hearing that Jerome had been diagnosed with Alzheimer's and dementia. While both conditions can be treated, neither is curable. Accordingly, if there was previously sufficient evidence to believe that these conditions rendered Jerome unable to effectively manage his property and business affairs in June 2021 (as a panel of this Court held), then there is no reasonable basis to conclude that his condition had improved to the point that, as of October 2022, he was able to effectively manage his property and business affairs. The evidence presented at the June 2021 hearing thus continued to provide a sufficient basis for the probate court to conclude that Jerome was unable to effectively manage his property and business affairs in October 2022 for the reasons explained by the previous panel that addressed this issue. See *Sizick*, unpub op at 4-5.

## 2. MCL 700.5401(3)(B)

The DHHS's more persuasive argument is that the probate court abused its discretion by finding that the requirements of MCL 700.5401(3)(b) were satisfied because it failed to apply the proper legal framework when assessing this subsection. We agree.

This Court in *Vansach* addressed the requirements of MCL 700.5401(3)(b). *Vansach* considered two cases with overlapping facts—in each case, there was an institutionalized spouse that had qualified for Medicaid, and the community spouse sought an order under MCL 700.5401(3) that would have effectively impoverished the institutionalized spouse. *Vansach*, 324 Mich App at 376-378. This Court was asked "to consider whether, and under what circumstances, a community spouse whose institutionalized spouse is receiving Medicaid benefits may obtain a support order under" the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. *Id*. at 377-378.

*Vansach* began its pertinent analysis by noting that, based on MCL 700.5401(3)(b)'s plain language, the community spouse must (1) make a showing of "need" and (2) prove that they are "entitled" to the institutionalized spouse's support. *Vansach*, 324 Mich App at 393-394. On the first point, *Vansach* explained that a community spouse was not required to show that he or she "lacks even the basic necessities of life" to make a showing of "need." *Id*. at 395. But *Vansach* also explained that the community spouse was not guaranteed any particular standard of living because the amount of support to which a community spouse could receive—or, stated differently, the amount of support to which a community spouse was entitled—was necessarily dependent on the means and circumstances of the institutionalized spouse. *Id*. at 395.

This bled into *Vansach*'s explanation about the second showing that a community spouse must make—that the community spouse was "entitled" to the institutionalized spouse's support. The Court recognized that married persons are generally entitled to support from their spouse, *id*. at 394, but that recognition did not end the inquiry. *Vansach* explained that, instead, the level of "support" to which a spouse is "entitled" is "contingent on the assumption that the spouse providing support has sufficient financial ability to provide that assistance." *Id*. at 395. "And the level of 'support' required is generally recognized as being that which is 'reasonably consistent' with the supporting spouse's 'own means and station.' " *Id*., quoting *Root v Root*, 164 Mich 638, 645; 130 NW 194 (1911).

According to *Vansach*, from this, "it follows that a finding that money is needed for a spouse entitled to support from the protected individual requires consideration of the requesting spouse's needs and resources as well as the protected individual's needs and circumstances." *Vansach*, 324 Mich App at 395. With these principles in mind, the Court opined that "a community spouse cannot make a showing of 'need' and is not 'entitled to the [incapacitated] individual's support' . . . when providing money to the spouse will leave the incapacitated individual entirely destitute and unable to meet his or her own needs." *Id*. at 396.

*Vansach* then addressed factors that lower courts should consider when deciding whether to enter a protective order under MCL 700.5401(3) when an institutionalized spouse is receiving Medicaid benefits. While these considerations are generally inapplicable here because Jerome was not receiving Medicaid benefits, some of *Vansach*'s remarks are relevant. For instance, *Vansach* explained that "a probate court's consideration of the couple's circumstances in light of Medicaid cannot involve a fallacious assumption that the institutionalized spouse should receive 100% free medical care under Medicaid . . . ." *Vansach*, 324 Mich App at 397. *Vansach* elaborated that Medicaid is a need-based program; that the "unfortunate reality" is that the cost of one spouse's medical care will have an effect on the healthy spouse's finances even in light of Medicaid's spousal-impoverishment provisions; and that there is a "trade-off" with this arrangement because, while the community spouse's standard of living may suffer, the institutionalized spouse's care is highly subsidized by taxpayers. *Id*. at 397-398. *Vansach* then concluded:

> Having made this trade-off, a community spouse is not entitled to have the probate court simply disregard Medicaid, ignore the institutionalized spouse's patient-pay amount, and impoverish the institutionalized spouse in order that the community spouse may maintain his or her standard of living without regard for the institutionalized spouse's needs and circumstances as they exist under Medicaid. Such a procedure is not contemplated by EPIC, and it is a gross misapplication of

the probate court's authority to enter an order when money is "needed" for "those *entitled* to the [incapacitated] individual's support." See MCL 700.5401(3)(b) (emphasis added). [*Vansach*, 324 Mich App at 398.]

This portion of *Vansach* thus emphasized that a probate court must take a holistic approach when assessing whether a community spouse is entitled to an institutionalized spouse's support under MCL 700.5401(3). As *Vansach* explained, this entails the court considering not only the community spouse's needs but the needs of the institutionalized spouse, as well as the institutionalized spouse's actual ability to provide support for the community spouse. *Id*. at 398-399. Pertinent to this case, *Vansach* also noted that, "as a matter of common sense, when an incapacitated person needs to be institutionalized to receive full-time medical care, it would be an unusual case for the community spouse's circumstances to trump the institutionalized spouse's need for use of his or her income to pay the medical expenses . . . ." *Id*. at 399 n 16.

Ultimately, *Vansach* vacated both of the protective orders at issue because, in both instances, the probate court had abused its discretion by issuing the orders without weighing the needs of the institutionalized spouse. *Id*. at 400-401. This Court elaborated that the probate court "operated within the wrong legal framework" by failing to weigh the needs of the institutionalized spouse when considering whether the community spouse was entitled to the institutionalized spouse's support. *Id*. at 400, 401. *Vansach* stated in no uncertain terms that it was an abuse of discretion for the probate court to order that the community spouse receive "additional support from" the institutionalized spouse if the institutionalized spouse "would be impoverished as a result." *Id*. The Court also reiterated that "[t]he unfortunate reality is that both spouses may feel the financial effects of a spouse's institutionalization," but the fact remained that "a support order under EPIC cannot be used to impoverish an institutionalized spouse as an end-run around Medicaid." *Id*. at 401.

Following *Vansach*, this Court addressed MCL 700.5401(3)(b) again in *Schroeder*. Like *Vansach*, *Schroeder* was a consolidated case. But unlike in *Vansach*, the petitions for protective orders in *Schroeder* were filed before Medicaid applications were submitted on behalf of the institutionalized spouses, and the probate court issued the protective orders "either before Medicaid applications were pursued or before Medicaid-eligibility determinations were made." *Schroeder*, 335 Mich App at 112. Despite this, the probate courts in *Schroeder* reasoned that the institutionalized spouses' needs could be met through Medicaid, thereby assuming that the institutionalized spouses would qualify for and thus receive Medicaid benefits. *Id*. at 121-122. The probate courts accordingly considered that the institutionalized spouses' needs would be met so long as they had enough income to cover their "prospective" or "estimated" patient-pay amounts for Medicaid. *Id*. at 121-122.

On appeal, this Court found "problematic the probate court's consideration of Medicaid and patient-pay amounts in assessing need when no Medicaid-eligibility and patient-pay determinations had been made at the time of the court's rulings." *Id*. at 122. This Court explained:

> We understand and appreciate that patient-pay amounts can be estimated before the submission of a Medicaid application and a Medicaid-eligibility determination. But in assessing the "need" for money for a person's support and care under MCL 700.5401(3)(b) on the basis of Medicaid-related circumstances,

-12-

there must actually be Medicaid determinations regarding eligibility and patient-pay amounts. Indeed, the *Vansach* panel stated that "[i]n cases in which an institutionalized spouse is receiving Medicaid benefits, weighing both spouses' needs and circumstances requires consideration of those needs and circumstances as they actually exist under Medicaid." *Vansach*, 324 Mich App at 396. The probate court here, however, considered needs in the context of Medicaid-related circumstances even though [the institutionalized spouses] were not receiving Medicaid benefits and were awaiting Medicaid-eligibility determinations. A nursing home resident who does not qualify for Medicaid coverage will certainly owe considerably more money to the nursing home than a patient-pay amount in a Medicaid setting. The idiom putting the cart before the horse is aptly applicable to the probate court's analysis. Therefore, reversal is necessary. Circumstances have likely evolved during the pendency of this appeal regarding care and Medicaid coverage. Consequently, on remand and assuming petitioners wish to continue, the probate court shall consider the circumstances as they actually exist. [*Schroeder*, 335 Mich App at 123.]

*Schroeder* thus stands for the rather unremarkable proposition that, when assessing an institutionalized spouse's needs related to MCL 700.5401(3)(b), the probate court must consider those needs as they are. This in turn means that the court cannot consider whether Medicaid will cover the institutionalized spouse's needs if the institutionalized spouse has yet to qualify for such benefits.

This is consistent with *Vansach*, particularly *Vansach*'s statements that "a probate court's consideration of the couple's circumstances in light of Medicaid cannot involve a fallacious assumption that the institutionalized spouse should receive 100% free medical care under Medicaid," *Vansach*, 324 Mich App at 397, and that probate courts assessing MCL 700.5401(3)(b) are to consider "the actual Medicaid-related realities facing the couple," *id*. at 398. Assuming that Medicaid will cover an institutionalized spouse's needs when that spouse has yet to even qualify for Medicaid benefits would be akin to "a fallacious assumption that the institutionalized spouse should receive . . . medical care under Medicaid," *id*. at 397, and would obviously *not* be assessing "the actual Medicaid-related realities facing the couple," *id*. at 398.[4]

Here, when the probate court issued the protective order, Jerome had not yet been deemed eligible for Medicaid. Consistent with *Schroeder*, the probate court did not consider (or at least

---

[4] *Vansach* also emphasized that, when an institutionalized spouse is receiving Medicaid benefits, probate courts assessing MCL 700.5401(3)(b) must consider the institutionalized spouse's "needs and circumstances as they actually exist under Medicaid." *Vansach*, 324 Mich App at 396. In context, *Vansach* was explaining that a probate court must consider an institutionalized spouse's actual patient-pay amounts, and thus could not impoverish the institutionalized spouse in order to bring the institutionalized spouse's prospective patient-pay amount to zero. Still, *Schroeder*'s reasoning is also consistent with this reasoning from *Vansach* in that, when assessing an institutionalized spouse's needs related to MCL 700.5401(3)(b), the probate court must consider those needs as they actually are.

did not state that it was considering) whether Jerome's needs could be met through Medicaid. And consistent with *Vansach*, when issuing its order, the probate court stated that it had considered Jerome's needs and circumstances, and concluded that Jerome had the financial ability to provide support for Janet without impoverishing himself. Yet, despite the probate court's statement that it had considered Jerome's needs and circumstances, nothing in either the probate court's recitation of the facts nor in its reasonings reflects that it did so. And without adequately considering Jerome's needs and circumstances, the probate court abused its discretion by failing to operate within the correct legal framework. See *Vansach*, 324 Mich App at 385.

Despite the fact that the probate court held two evidentiary hearings in this case, the record contains almost no evidence identifying Jerome's needs. Janet made no mention of Jerome's needs in her original petition; rather, she gave an estimate about what Jerome's prospective patient-pay amount would be under Medicaid. Under *Schroeder*, however, the probate court could not consider this as evidence of Jerome's needs because Jerome had not yet qualified for Medicaid.

At the first evidentiary hearing, no one testified about Jerome's needs. In fact, when Janet was questioned about Jerome's needs, she said she was "not sure" what his expenses were. And when questioned about how Jerome could pay for his care if his resources and income were transferred to her, Janet initially said that she did not know, and then, after prompting by Gries, said that she believed Medicaid could cover his expenses.

When the probate court issued its first oral ruling from the bench, it said that it had considered Jerome's needs as stated in Janet's petition. But, as already explained, the petition did not outline Jerome's needs at all; it only gave an estimate about what Jerome's prospective patient-pay amount would be under Medicaid. Taking the probate court's statement at face value, it was clearly improper under *Schroeder*. This was not the court's last words on the subject, however, because a court speaks through its written orders. *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Regrettably, in the June 21, 2021 written order, the probate court did not elaborate any further. Instead, the court summarily stated, "The Court finds that the protected individual has financial means and ability to provide financial assistance for his wife; and the foreseeable needs of the protected individual, the individual's creditor's, and his wife's basic but not excessive or merely desirable, needs have been considered."

As is hopefully evident, up to this point in the proceedings, there was virtually no evidence presented to the probate court about what Jerome's needs were—the only evidence was in the petition estimating Jerome's prospective patient-pay amounts under Medicaid, which the probate court could not consider pursuant to *Schroeder*. Unsurprisingly, then, the panel in *Sizick* vacated the probate court's finding under MCL 700.5401(3)(b) "on the basis of need," explaining that the probate court could not consider whether Jerome's needs could be met through Medicaid when he had not yet been deemed eligible for Medicaid benefits. *Sizick*, unpub op at 5-6.

Unfortunately, on remand, the probate court did not receive much additional evidence about Jerome's needs. Rather, the hearing focused almost exclusively on Janet's needs. As far as Jerome was concerned, Janet testified that she made monthly payments to his nursing home at her attorney's instructions that could be "characterize[d] as a patient pay amount" of $573 per month in 2021 and $654 per month in 2022. And Geiersbach, the director of billing services for Jerome's nursing home, testified that, at the time of the hearing, Jerome owed $126,719, and that amount

-14-

would increase to $134,669 the next month. From this evidence, it is still unclear what Jerome's needs were, but it is clear that he could not continue paying $573 or $654 per month because the result of that payment plan was that he owed over $120,000 and counting.

No one testified about what Jerome's nursing home charged, but there was a document admitted as an exhibit at the second evidentiary hearing that reflected Jerome's bill from his nursing home. That document shows that Jerome's expenses at the nursing home came out to $265 per day.[5]

Despite this evidence (or lack thereof), the probate court granted petitioner's request for a protective order, transferred all of Jerome's assets to Janet, and ordered Jerome to pay $2,318 of his monthly income as support for Janet. In the probate court's oral ruling, it recognized that it needed to consider Jerome's needs, but it never did so—nowhere in its oral ruling did the court identify Jerome's needs or address whether he had the ability to provide support to Janet. In its written order, the probate court likewise never identified Jerome's needs or how he could cover his expenses while providing support to Janet. Instead, the probate court summarily wrote, "This Court has considered the interest of the protected individual and his needs and obligations to contribute to the cost of his own care and [sic: in] deciding whether or not to award property and income to Janet Sizick," and, "This Court finds that the protected individual has financial means and ability to provide financial assistance for his dependent spouse; and the foreseeable needs of the protected individual, the individual's creditors, and his dependent spouse's basic but not excessive or merely desirable needs have been considered."

On the basis of the evidence before the probate court and its stated findings, it is plain that the probate court failed to consider Jerome's needs. Again, based on the testimony that the probate court heard, Jerome was paying $573 or $654 per month to his nursing home, and the result of those payments was that Jerome still owed $126,719 to his nursing home at the time of the hearing. Despite this, the trial court ordered Jerome to pay $2,318 of his $2,951.50 net monthly income[6] to Janet, leaving Jerome with $633.29 in monthly income. This was *less* than what Jerome was currently paying for his care, and Jerome's current payments were already grossly insufficient to cover his expenses. Moreover, an exhibit submitted at the evidentiary hearing reflected that Jerome's nursing-home care cost $265 per day. The $633.29 per month that the probate court left for Jerome would thus be enough to cover a little over two days of his care. Not only is this amount of monthly income utterly insufficient to cover Jerome's expenses, but the probate court also transferred all of Jerome's resources to Janet, leaving Jerome with no assets to cover the remainder of his expenses in any given month.

Considering this evidence, the only reasonable conclusion is that the probate court did not adequately consider Jerome's needs and circumstances. Based on *Vansach*, 324 Mich App at 395,

---

[5] The exhibits admitted at the second evidentiary hearing are not part of the record that was submitted to this Court. The exhibit reflecting the daily cost of Jerome's nursing home is included in petitioner's appendix on appeal.

[6] Jerome receives $3,099.79 in gross monthly income from a combination of a pension and social security, but $2,951.50 in net monthly income after his Medicare Plan Part B premium is deducted.

the level of support that Jerome could provide Janet was dependent on Jerome having sufficient means to provide that support. Jerome clearly needed his income and resources to pay for his medical expenses. This is not to say that Janet did not also need those assets, but "as a matter of common sense, when an incapacitated person needs to be institutionalized to receive full-time medical care, it would be an unusual case for the community spouse's circumstances to trump the institutionalized spouse's need for use of his or her income to pay the medical expenses . . . ." *Id*. at 399 n 16. There is nothing "unusual" about this case, and the probate court never explained why Janet's circumstances "trumped" Jerome's need for the use of his income to pay for his medical expenses.

As *Vansach* stated, a community spouse cannot show entitlement to support under MCL 700.5401(3)(b) "when providing money to the spouse will leave the incapacitated individual entirely destitute and unable to meet his or her own needs." *Id*. at 396. Yet that is precisely what the probate court's order did in this case, and it did not provide any explanation for why.

Accordingly, we conclude that the probate court probate court failed to operate under the correct legal framework because, despite its statements to the contrary, nothing in either the probate court's recitation of the facts nor in its reasonings reflects that it adequately considered Jerome's needs and circumstances. We therefore vacate the probate court's protective order and again remand for the probate court to properly address MCL 700.5401(3)(b).[7]

## III. TRANSFER OF ASSETS

The DHHS further argues that the probate court erred by not using up-to-date information about the value of the assets being transferred to Janet and Jerome's interest in those assets. We agree. While the protective order must be vacated for the reasons explained, we believe that it is necessary to also address this argument because it is likely to occur again on remand if the probate court again finds grounds to issue another protective order.

In *Schroeder*, this Court held

that when a probate court acts to transfer property upon satisfaction of the prerequisites in MCL 700.5401 relative to need, it is imperative for the court to identify the interests being transferred and the value of those interests. Although there is no specific language in EPIC demanding that information, when a court is examining the financial needs of spouses and orders asset transfers on the basis of those needs, a valuation of the assets or interests therein is an inescapable and necessary component of the analysis. [*Schroeder*, 335 Mich App at 125.]

In its first order in June 2021, the probate court merely provided conclusory statements about Jerome and Janet's marital assets with "little to no evidence supporting or identifying these

---

[7] Nothing we say in this opinion should be interpreted to preclude the DHHS from processing Jerome's application for Medicaid benefits if one is submitted. As the attorney general conceded at oral argument, Jerome is free to submit another application for Medicaid benefits.

-16-

countable assets, real property, and personal property." *Sizick*, unpub op at 7. As the prior *Sizick* panel explained:

> As a result, it is unclear what assets or property are included in trial court's "countable assets" calculation, whose ownership interest is included in the trial court's calculation or petition, and whether the trial court's order transferred property independently owned by petitioner. Therefore, to the extent the trial court on remand grants a new protective order, evidence should be presented regarding the ownership interest and value of the assets being transferred. [*Id.*]

In the panel's concluding paragraph, it instructed the probate court "to identify the property being transferred under MCL 700.5408." *Id.*

On remand, the probate court heard testimony and received exhibits detailing the value of various assets and Jerome's interest in those assets. These assets included property interests with valuations from 2021, balances from several credit union accounts with balances from March 2021, shares of Prudential stock in Jerome's name (though Gries testified at the second evidentiary hearing that these stocks were no longer in Jerome's name and had been transferred to Janet), a life insurance policy that had a cash value estimated as of July 2021, and two vehicles in Jerome's name. In its eventual written order, the probate court summarized this evidence and ordered it transferred to Janet, stating as follows:

> [Janet] and Julie Gries identified, through evidence and testimony, all of the property of Jerome and Janet Sizick. Specifically, they jointly own a house in Bridgeport Township, Michigan with a value of $100,800.00. Janet Sizick is a tenant-in-common with 3 other siblings in real estate in Gladwin, Michigan having a value of $40,000.00. There were 7 joint accounts held in credit unions amounting to approximately $144,366.00. Jerome Sizick owns 63 shares of Prudential Stock equaling approximately $5,712.00 and he was the owner of a life insurance policy with a cash value of $10,509.00. These values were based on information as of March of 2021. Finally, Mr. Sizick owned 2 vehicles that had an approximate value of $40,000.00.

> * * *

> IT IS HEREBY ORDERED that Jerome E. Sizick is to transfer 100% of Mr. Sizick's assets including real estate, credit union accounts, financial investments, and insurance as identified in the hearing to Janet A. Sizick as support.

The DHHS argues that the probate court erred because this list is not an accurate representation of "the interests being transferred and the value of those interests," as required by *Schroeder*, 335 Mich App at 125. We agree.

While it is true that *Schroeder* did not say that probate courts needed to identify the "current" interests being transferred and the value of those interests, that seems a necessary corollary of its ruling, particularly when dealing with assets like credit union accounts and financial investments. The value of these assets obviously fluctuates, and things such as financial investments can even be transferred. Bearing that in mind, the only way a probate court can

"identify the interests being transferred and the value of those interest" is if it has current information—such as who owns the financial investments, and how much money is in the credit union accounts.

This case provides a rather good example of why current information is necessary. The probate court had evidence before it that Jerome owned 63 shares of Prudential stock, and accordingly identified this Prudential stock as an asset in which Jerome had interest. Yet the evidence on which the probate court relied for this finding was from 2019, and Gries testified that the Prudential stock had since been transferred to Janet. Thus, by relying on outdated information, the probate court ordered Jerome to transfer an asset to Janet that he did not possess.

Accordingly, if the probate court decides that another protective order is appropriate and transfers Jerome's income and resources pursuant to MCL 700.5408, the probate court must identify the *current* interests being transferred and the *current* value of those interests.

## IV. RETROACTIVITY OF ORDER

Lastly, the DHHS argues that the probate court erred by backdating its December 2022 order to June 21, 2021. Because this issue is likely to reoccur on remand, we conclude that it is necessary to address. Doing so, we agree with the DHHS that the probate court erred by backdating the protective order.

The DHHS primarily argues that the probate court violated MCR 2.602(A) by backdating its protective order. "The interpretation and application of a court rule presents a question of law that is reviewed de novo." *Bauroth v Hammoud*, 465 Mich 375, 378; 632 NW2d 496 (2001).

MCR 2.602 provides in pertinent part:

**(A) Signing; Statement; Date of Entry.**

(1) Except as provided in this rule and in MCR 2.603,[8] all judgments and orders must be in writing, signed by the court, and dated with the date they are signed.

(2) The date of signing an order or judgment is the date of entry.

The staff comment to the 1985 adoption of this rule states, "The language of subrule (A) is modified to require that the judgment or order be dated the date it is signed by the judge, prohibiting the backdating of judgments and orders." While staff comments are nonbinding, "they can be persuasive in understanding the proper scope or interpretation of a rule or its terms." *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 507 Mich 272, 294 n 39; 968 NW2d 367 (2021).

---

[8] MCR 2.603 addresses defaults and default judgments.

By the plain language of MCR 2.602(A)(1), the trial court's December 13, 2022 order could not be backdated to June 21, 2021. The probate court characterized its order as an "amended protective order," but, notably, nothing about the order complies with the rule for amending judgments in MCR 2.611.

It seems as though the probate court believed that it could backdate the order in this case because "[b]ut for the [DHHS's] own actions to not process the Medicaid Application, Jerome Sizick would have become eligible for Medicaid." Problematically, neither the probate court nor Janet has explained why this granted the probate court the authority to backdate its December 13, 2022 protective order. Accordingly, this reasoning is facially insufficient to justify the probate court's decision to backdate the December 2022 order to June 2021.

The probate court alternatively reasoned that it could apply the doctrine of nunc pro tunc to backdate its order. Nunc pro tunc refers to a court's inherent power to give retroactive effect to modifications of its orders to make a record of what actually occurred but had been omitted from the order. See *Shifferd v Gholston*, 184 Mich App 240, 243; 457 NW2d 58 (1990) ("An entry nunc pro tunc is proper to supply an omission in the record of action really had, but omitted through inadvertence or mistake."). "The function of such an order is to supply an omission in the record of action previously taken by the court but not properly recorded; an order nunc pro tunc may not be utilized to supply previously omitted action." *Sleboede v Sleboede*, 384 Mich 555, 558-559; 184 NW2d 923 (1971).

The December 13, 2022 order did not merely correct the June 21, 2021 order. The previous order accurately reflected what the probate court had ruled. Indeed, the current order reached the same result, and the only difference is that the probate court tried to sufficiently justify its reasoning. This is not an instance of the probate court supplying an omission of an action previously taken, but an attempt to utilize nunc pro tunc "to supply previously omitted action." *Id*. Accordingly, the probate court could not rely on the doctrine of nunc pro tunc to backdate its December 13, 2022 protective order to June 21, 2021.

## V. CONCLUSION

The probate court's finding with respect to MCL 700.5401(3)(a) continues to be affirmed. But the protective order is nevertheless vacated because we conclude that the probate court applied the wrong legal framework when addressing MCL 700.5401(3)(b) by failing to adequately consider Jerome's needs and circumstances. The case is accordingly remanded for further proceedings with respect to MCL 700.5401(3)(b). If, on remand, the probate court decides to order Jerome to transfer income and assets, it must use current information about the value of Jerome's assets and Jerome's interest in those assets. Additionally, the probate court must appropriately date any protective order that it issues on remand as explained in this opinion.

Affirmed in part, vacated in part and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

-19-